**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:21-CR-181 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RAMON OQUENDO, | : | APRIL 3, 2023 |
| Defendant. | : | |
| | : | |

**RULING ON MOTION FOR JUDGMENT OF ACQUITTAL (DOC. NO. 181)**

**I.    INTRODUCTION**

On March 2, 2023, following a jury trial, defendant Ramon Oquendo ("Mr. Oquendo") was convicted of five counts of the Superseding Indictment.  See Jury Verdict (Doc. No. 176).  Six days later, Mr. Oquendo timely filed a Motion for Judgment of Acquittal ("Def.'s Mot.") (Doc. No. 181) pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  His Motion seeks acquittal only on Count Five of the Superseding Indictment, which charged him with possession of a firearm in furtherance of a drug trafficking crime.

For the reasons stated below, Mr. Oquendo's Motion is denied.

## II.   BACKGROUND

On December 7, 2022, the grand jury returned a six-count Superseding Indictment against Mr. Oquendo and three co-defendants.  See Superseding Indictment (Doc. No. 91).  Count Five charged Mr. Oquendo with possessing a firearm in furtherance of a drug trafficking crime, in violation of section 924(c)(1)(A)(i) of title 18 of the United States Code.  Id. at 5.  In particular, the Count alleged that, on or about October 26, 2021, Mr. Oquendo knowingly and intentionally possessed "one Glock-style handgun with no discernable serial number" in furtherance of the drug trafficking crime charged in Count Four.[1]  Id.

Mr. Oquendo's trial began with jury selection on February 23, 2023, and the start of evidence on February 24, 2023.  See Minute Entry for Jury Selection (Doc. No. 160); Minute Entry for Jury Trial (Doc. No. 162).  The Government's first witness was Special Agent Andrew Hoffman ("Special Agent Hoffman") of the Drug Enforcement Agency.  See Transcript of February 24, 2023 ("2/24/23 Trial Tr.") at 3–5 (Doc. No. 163).  Special Agent Hoffman testified that, during the execution of a search warrant at Mr. Oquendo's residence, law enforcement recovered a "firearm" wrapped in green cellophane as well as a magazine containing ten rounds of ammunition that was "attached to the gun."  Id. at 14, 38–44, 85–94.  Special Agent Hoffman identified the firearm found as a "Semiautomatic handgun," id. at 39, which lacked a serial number and had "Polymer 80" etched onto the receiver, see id. at 43, 44.  When the "firearm" was discovered, it was

---

[1] Count Four alleged that, on or about October 26, 2021, Mr. Oquendo possessed with intent to distribute a mixture and substance containing a detectable amount of cocaine base as well as a mixture and substance containing a detectable amount of fentanyl, in violation of sections 841(a)(1) and 841(b)(1)(C) of title 21 of the United States Code.  Id.

located in a box that also contained approximately 88.528 grams of fentanyl, 64 grams of cocaine base, and cutting agents.  See Id. at 39, 51–69.  Drug packaging materials and $43,850 in cash were found in close proximity to the box.  See id. at 69–79.  Special Agent Hoffman also testified that another 10.046 grams of fentanyl were seized from another room on the same floor of the residence.  Id. at 79–82.  On cross examination, Special Agent Hoffman testified that he carries a firearm and has received training in the use of firearms.  See Transcript of February 27, 2023 ("2/27/23 Trial Tr.") at 8 (Doc. No. 167).

On March 1, 2023, the Government called Senior Special Agent Michael Oppenheim ("Special Agent Oppenheim") of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to the witness stand.  See Transcript of March 1, 2023 ("3/1/23 Trial Tr.") at 74 (Doc. No. 180).  Special Agent Oppenheim testified that he was trained in identifying and handling firearms, see id. at 75, and that he is knowledgeable about privately produced firearms, see, e.g., id. at 79.  According to Special Agent Oppenheim, Polymer 80 is the "industry leader and they by far the most common type of privately made firearm or ghost gun that are being recovered or investigated by law enforcement."  Id. at 82.  Ghost guns, he testified, lack a serial number and are a "device capable of propelling a projectile with the use of an explosion. . . ."  Id. at 92.

At the close of the Government's case-in-chief, Mr. Oquendo made an oral Motion for a Judgment of Acquittal on all counts, which he renewed after resting without presenting any evidence.  See Oral Rule 29 Motion (ECF No. 171).  Mr. Oquendo's Motion was denied, see Minute Entry (Doc. No. 172), and, pursuant to Rule 29(c)(1), is now renewed with respect to Count Five only.  See Def's Mot. at 1; Memorandum in

Support of Motion for Judgment of Acquittal ("Def.'s Mem.") (Doc. No. 181–1).  The Government opposes the Motion.  See Opposition to Rule 29 Motion ("Gov't's Opp.") (Doc. No. 186).

### III.    LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure requires the court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  A defendant who challenges the sufficiency of the evidence supporting "a jury's guilty verdict bears a heavy burden."  United States v. Pauling, 924 F.3d 649, 656 (2d Cir. 2019) (quotation marks and citation omitted).  This is because the court, in deciding a motion for a judgment of acquittal, must view the evidence in the light most favorable to the government and draw all permissible inferences in favor of the government.  Id.  In contrast to impermissible speculation, which occurs when there is "a complete absence of probative facts to support the conclusion reached[,]" a permissible inference "is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."  See id. (quotation marks and citation omitted).  "These principles apply whether the evidence being reviewed is direct or circumstantial."  United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008), abrogated on other grounds by Dean v. United States, 581 U.S. 62 (2017).

The conviction will not be disturbed "as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Percoco, 13 F.4th 158, 169 (2d Cir. 2021) (emphasis in original) (quotation marks and citation omitted).  The court must view the evidence "in its totality, as each

fact may gain color from others." United States v. Cassese, 428 F.3d 92, 98–99 (2d Cir. 2005) (quotation marks and citations omitted).  Additionally, the court must be careful not to substitute its determination of the weight of the evidence, or the inferences to be drawn, for that of the jury.  Id. at 98.

IV.     DISCUSSION

   A.     Possession of a Firearm

Mr. Oquendo argues that no jury could rationally find that the Government proved that the object recovered met the statutory definition of a firearm, which is "any weapon that will, or is designed to, or may be readily converted to expel a projectile by the action of an explosive."  See Def.'s Mem. at 2; Jury Instructions at 75 (Doc. No. 175); see also 18 U.S.C. § 921(a)(3)(A).  In support of this argument, Mr. Oquendo posits that the Government failed to present any evidence demonstrating that the object "will, was designed to, or may be readily converted to expel a projectile by the action of an explosive."  See Def.'s Mem. at 2.

Viewing the evidence at trial in the light most favorable to the government, however, the court disagrees.  To begin with, it is of no consequence that the firearm was inoperable.  The Second Circuit is clear that inoperable weapons are within the ambit of section 921(a)(3)(A)'s definition of a "firearm."  United States v. Rivera, 415 F.3d 284, 286 (2d Cir. 2005) ("Where a weapon designed to fire a projectile is rendered inoperable, whether on purpose or by accident, it is not removed from the statute's purview; although it is temporarily incapable of effecting its purpose, it continues to be 'designed' to fire a projectile.").

Here, there are numerous facts supporting the jury's "logical, reasoned decision" that the object found was a weapon designed to expel a projectile by the action of an

explosive. Special Agent Hoffman—a witness trained in the use of firearms, see 2/27/23 Trial Tr. at 8–9—testified that the object found was a "Semiautomatic handgun," which had "Polymer 80" etched onto the receiver and lacked a serial number, see 2/24/23 Trial Tr. at 39, 43, 44. He also testified that "attached to the gun" was a magazine containing ten rounds of ammunition. Id. at 43. Moreover, Special Agent Oppenheim—who was trained in identifying and handling firearms, see 3/1/23 Trial Tr. at 75—testified about handguns (i.e., "firearms designed to be fired one-handed", id. at 77) and the characteristics of Polymer 80 ghost guns, see id. 79–88. It is the court's view that Special Agent Oppenheim's description of Polymer 80 ghost guns closely resembles the object recovered and introduced into evidence as Government's Exhibit 1. That, combined with Special Agent Oppenheim's testimony that a ghost gun is a "device capable of propelling a projectile with the use of an explosion", see id. at 92, is sufficient evidence for a rational trier of fact to infer that the recovered object was a ghost gun and that it met the statutory definition of a firearm. See Jury Instructions at 75 (Doc. No. 175); 18 U.S.C. § 921(a)(3)(A).

Accordingly, Mr. Oquendo's Motion for Judgment of Acquittal on Count Five is denied on this ground.

        B.      <u>Nexus Between Firearm Possession and Drug Trafficking Offense</u>

Mr. Oquendo next contends that the Government failed to prove that the firearm was possessed "in furtherance" of a drug trafficking crime. See Def.'s Mem. at 2. More specifically, Mr. Oquendo avers that, because the gun was unloaded and in two pieces, "no rational trier of fact could have found the essential nexus between the charged firearm and the drug trafficking crime" alleged in Count Four of the Superseding Indictment. Id. at 2–3.

To prove a defendant guilty of possessing a firearm in furtherance of a drug trafficking crime, the Government "must establish the existence of a specific nexus between the charged firearm and the charged drug selling operation." United States v. Alston, 899 F.3d 135, 146 (2d Cir. 2018) (quotation marks and citation omitted). Because this inquiry is fact-intensive, the Second Circuit has identified a non-exhaustive list of relevant factors to be considered, including:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

United States v. Snow, 462 F.3d 55, 62 n.6 (2d Cir. 2006) (quotation marks and citation omitted). Ultimately, the inquiry comes down to "whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." Alston, 899 F.3d at 146 (quotation marks and citation omitted). While innocent possession of a firearm is an insufficient basis for a conviction, "a drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." Snow, 462 F.3d at 62–63 (citation omitted).

At Mr. Oquendo's trial, the Government introduced evidence relevant to several of the nexus factors articulated in Snow. With regards to the type of drug activity, the Government seized nearly 100 grams of fentanyl, 64 grams of cocaine base, cutting agents, and drug packaging materials from Mr. Oquendo's residence. See 2/24/23 Trial Tr. at 39, 51–69, 79–82. An FBI Agent clarified that fentanyl is typically packaged in wax folds containing .02 grams of the drug, see 2/27/23 Trial Tr. at 45, while cocaine base is often sold in bags that contain .1 or .2 grams of the narcotic, see id. As such, a

7

rational trier of fact could conclude that the quantity of fentanyl and cocaine base recovered was indicative of large-scale drug dealing.

Proximity is another factor weighing in favor of a nexus finding. The firearm was recovered in a box that also contained more than 80 grams of fentanyl, 64 grams of cocaine base, and cutting agents. See 2/24/23 Trial Tr. at 51–69. Additionally, law enforcement seized drug packaging materials in the same closet and $43,850 in cash a mere "foot or two" from the box. See id. at 69–79. In terms of accessibility, the gun was recovered in the closet of the primary bedroom, which is where Mr. Oquendo was seen when law enforcement approached his residence to execute the search warrant. See 2/24/23 Trial Tr. at 31. As to the status of the firearm, it did not have a serial number, see id. at 44, which means it was not lawfully possessed, see 3/1/23 Trial Tr. at 85–87. The lack of a serial number is also relevant because it "significantly hamper[s]" law enforcement investigations, id. at 88, as officers cannot easily determine whether it was stolen or previously used in the commission of a crime, see id. at 88–89.

That the gun at issue was not loaded when it was recovered is a factor to be considered, see Snow, 462 F.3d at 62 n.6; however, it is only one of many. This is especially true in light of the fact that ten rounds of ammunition were found "attached to the gun." 2/24/23 Trial Tr. at 43. Viewing all the evidence in the light most favorable to the Government, a jury could reasonably find that Mr. Oquendo's possession of the weapon "facilitated or advanced the instant drug trafficking offense by protecting himself, his drugs, and his business." Snow, 462 F.3d at 63 (quotation marks and citation omitted).

Accordingly, Mr. Oquendo's Motion for Judgment of Acquittal is denied on this ground as well.

## V.     CONCLUSION

For the reasons stated above, Mr. Oquendo's Motion for Judgment of Acquittal (Doc. No. 181) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of April 2023.

         /s/ Janet C. Hall
         Janet C. Hall
         United States District Judge